JOHN W. HUBER, United States Attorney (#7226)
CY H. CASTLE, Assistant United States Attorney (#4808)
Attorneys for the United States of America
111 South Main Street, #1800
Salt Lake City, Utah 84111
Telephone:   (801) 524-5682



FILED
U.S. DISTRICT COURT

2018 SEP 13  P 5: 23

DISTRICT OF UTAH

BY: _____
    DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GABRIEL SETH ELSTEIN,<br>ANGELA CHRISTINA ELSTEIN,<br>SCOTT DALE GORDON, and<br>DUMBLES HOLDINGS, LLC,<br><br>Defendants. | Case No. 2:18cr00099<br><br>**SUPERSEDING INDICTMENT**<br><br>Vio. 21 U.S.C. § 841(a)(1) and § 846,<br>Conspiracy to Distribute<br>(Count 1);<br>21 U.S.C. § 841(a)(1),<br>Possession with Intent to Distribute a<br>Controlled Substance<br>(Counts 2-3);<br>18 U.S.C. § 1956(h), Conspiracy to<br>Commit Money Laundering<br>(Count 4);<br>18 U.S.C. § 1956(a)(1)(A)(i), Promotion<br>Money Laundering<br>(Count 5);<br>18 U.S.C. § 1956(a)(1)(B)(i),<br>Concealment Money Laundering<br>(Counts 6-7);<br>18 U.S.C. § 1957, Money Laundering<br>(Counts 8-13)<br><br>Judge Clark Waddoups |

1

The Grand Jury Charges:

At times relevant to this Superseding Indictment:

## Defendants and Their Companies

1. Defendant GABRIEL SETH ELSTEIN ("ELSTEIN") was a resident of the state of Utah and a managing member of defendant DUMBLES HOLDINGS, LLC ("DUMBLES").

2. Defendant ANGELA CHRISTINA ELSTEIN ("A. ELSTEIN") was a resident of the state of Utah and the wife of defendant ELSTEIN and a managing member of DUMBLES.

3. Defendant SCOTT DALE GORDON ("GORDON") was a resident of the state of Utah and the managing member of Bondad Enterprises, Inc. and The Complex, LLC.

4. Defendant DUMBLES was a Utah limited liability company established in 2007 with offices in Salt Lake City, Utah.

5. Bondad Productions, LLC was a Utah limited liability company established in 2005 with business offices in Salt Lake City, Utah to promote electronic dance music/rave shows. Bondad Enterprises and defendant DUMBLES were managing members of Bondad Productions. Defendant GORDON was the lone signer on a bank account with Zions Bank for Bondad Productions but in July 2010, defendant ELSTEIN was added as a signer. They were also signers of the bank accounts for The Complex.

6. The Complex, LLC was a Utah limited liability company established in 2009 with offices in Salt Lake City, Utah.

/

/

/

<u>**COUNT 1**</u>
**21 U.S.C. §§ 841(a)(1) and 846**
**(Conspiracy to Distribute Marijuana)**

7.     The grand jury incorporates by reference paragraphs 1 through 6 as if fully stated herein.

8.     On a date unknown, but at least by April 2007, and continuing through December 2013, in the Central Division of the District of Utah and elsewhere,

**GABRIEL SETH ELSTEIN,**
**ANGELA CHRISTINA ELSTEIN and**
**SCOTT DALE GORDON,**

the defendants herein, did knowingly and intentionally combine, conspire, confederate, and agree with others known and unknown, to distribute 1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance, within the meaning of 21 U.S.C. § 812; all in violation of 21 U.S.C § 841(a)(1) and 21 U.S.C. § 846, and punishable pursuant to 21 U.S.C. § 841(b)(1)(A).

**Object of the Drug Conspiracy**

9.     The object of the drug conspiracy was to promote and facilitate the carrying on of the possession and distribution of large quantities of marijuana in various locations throughout the United States in violation of 21 U.S.C §§ 841 and 846 to generate large sums of marijuana cash proceeds to support various business ventures.

**Manner and Means**

10.     It was part of the drug conspiracy that defendants GORDON, ELSTEIN and A. ELSTEIN to obtain sizable quantities of marijuana for distribution by finding wholesale marijuana suppliers in northern California; recruiting drivers to deliver marijuana loads from

California to Salt Lake City, Minnesota, Illinois and Wisconsin; and utilizing retail distributors to sell the marijuana in the described destination cities.

## Overt Acts

11.    In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the defendants or conspirators, both indicted and unindicted, committed, among others, the following overt acts in the District of Utah and elsewhere:

12.    In about early 2006, defendant ELSTEIN and GORDON agreed they would buy and sell marijuana and split the profits from marijuana sales.   Defendant GORDON had a strong business background because of his involvement in several businesses and defendant ELSTEIN had a strong background in selling marijuana because he had been selling marijuana in the Salt Lake City area.

13.    At about the same time, defendant GORDON started a music production company known as Bondad Productions to promote concerts at music venues in the Salt Lake County area. Because of the nature of this business, Bondad Productions was a cash-heavy business.

14.    As part of their agreement, defendant ELSTEIN needed defendant GORDON to provide $40,000 to pay an existing marijuana debt of defendant ELSTEIN'S and to acquire additional marijuana.

Supplier 1.

15.    Defendant ELSTEIN made the phone calls to meet with Supplier 1, a marijuana grower in California from whom defendants ELSTEIN AND GORDON would purchase large quantities of marijuana.

4

16.     Defendant GORDON drove to California with his $40,000 to pay defendant ELSTEIN'S drug debt to Supplier 1 and to obtain marijuana from Supplier 1.

17.     On the same trip, Supplier 1 fronted 80 pounds of marijuana to defendant GORDON.   Defendant GORDON drove the 80 pounds of marijuana from California to Salt Lake City and delivered the marijuana to defendant ELSTEIN'S home in the Avenues for him to sell.

18.     During 2007 of their partnership, defendant GORDON travelled to California approximately four times to purchase on each occasion between 55 and 99 pounds of marijuana from Supplier 1 and drive the marijuana back to Salt Lake City to deliver to defendant ELSTEIN'S home for him to sell.

19.     On his third trip, defendant GORDON brought Driver 1 with him to teach how to drive marijuana safely and discretely.   Defendant GORDON and Driver 1 returned to Salt Lake City with 70 to 99 pounds of marijuana and delivered it to defendant ELSTEIN'S home for him to sell.

20.     On another trip, defendant ELSTEIN travelled to California with an unidentified driver, a friend of defendant ELSTEIN'S, and purchased approximately 50-60 pounds of marijuana from Supplier 1 and drove back to Salt Lake City.

21.     Concerned that defendant ELSTEIN'S home was not a safe place for their marijuana business, defendants GORDON and ELSTEIN leased a warehouse in Salt Lake City to store their marijuana and marijuana cash proceeds in two safes located at the warehouse.

22.     Toward the end of the summer of 2007, defendants GORDON and ELSTEIN ended their relationship with Supplier 1 over a dispute about money owed to Supplier 1.   At the

5

end of their business dealings with Supplier 1, defendants GORDON and ELSTEIN had accumulated about $200,000 in cash on hand.

Suppliers 2 and 3.

23.     In an effort to find a new marijuana suppler, defendants GORDON and ELSTEIN traveled to Chico, California to meet with Supplier 2.    Supplier 2 agreed to shop for marijuana with the local marijuana growers and act as the broker between the local growers and defendants GORDON and ELSTEIN.

24.     Around December 2007, Supplier 2 was arrested for marijuana in California. After Supplier 2 was arrested, defendant ELSTEIN met another marijuana broker, Supplier 3, in Chico who sold large quantities of marijuana to the defendants beginning around February 2008 and continuing until 2013.

25.     On one occasion during 2009, defendants ELSTEIN and GORDON drove to Chico with $300,000 in cash and defendant ELSTEIN purchased 150 pounds of marijuana from Supplier 3.    Defendants GORDON and ELSTEIN drove back to Salt Lake with the 150 pounds to sell.

26.     Defendants GORDON and ELSTEIN rented a workshop garage in Chico to package marijuana they purchased from Supplier 3.    Defendants GORDON and ELSTEIN used the workshop garage between approximately February 2008 until spring 2009.

27.     Starting in the spring of 2009, defendants GORDON and ELSTEIN moved from the workshop garage to an orchid ranch in Chico.    Defendant ELSTEIN paid approximately $20,000 to build a workshop on the ranch property, which defendants GORDON, ELSTEIN and A. ELSTEIN used to package marijuana.    They used this ranch until early 2013.

Supplier 4.

28.    In late 2013 to early 2014, defendant GORDON decided to turn over his interest in The Complex to defendants ELSTEIN and A. ELSTEIN and continued with the marijuana business and assist in the California marijuana grow business with Supplier 4.

29.    Defendant GORDON taught Supplier 4 the process of packaging and inventorying the marijuana.   He also taught Supplier 4 how to do the accounting and keep track of marijuana sales.

30.    Defendant GORDON helped Supplier 4 setup a marijuana grow operation and a THC extraction lab.   In May 2014, defendant GORDON'S and Supplier 4's business relationship ended.   Prior to their relationship ending, defendant GORDON obtained approximately 76 pounds of marijuana from Supplier 4 that was sold in Illinois.

Drivers 1 and 2.

31.    During the period from May 2007 to December 2007, defendants GORDON and ELSTEIN hired Drivers 1 and 2 on four to five occasions to transport on each occasion approximately 55-99 of pounds of marijuana from California to Salt Lake City to Minnesota and Illinois for retail distribution.

32.    Drivers 1 and 2 would pick up the marijuana from various growers, including Supplier 1, in California and drive the marijuana to an auto shop in Salt Lake City where they would separate the marijuana for delivery at different destinations.   Driver 1 and 2 would then drive to Des Moines, Iowa where they would spilt up the marijuana.   Driver 1 drove to Minnesota and Driver 2 drove to Illinois.

7

33.     During the same period, Drivers 1 and 2 also delivered approximately $1,000,000 to defendant GORDON for all the marijuana they have delivered for defendant GORDON to Minnesota and Illinois.

34.     Defendants GORDON and ELSTEIN paid Drivers 1 and 2 approximately $100 a pound for each pound transported.   Defendant GORDON paid Drivers 1 and 2 in cash for their work.   Driver 1 was paid about $15,000 total for the different trips.

35.     In December 2007, the Nebraska Highway Patrol pulled over and arrested Drivers 1 and 2 for transporting 68 pounds of marijuana for defendants GORDON and ELSTEIN.   They were driving defendant GORDON'S car and the marijuana was packaged in vacuum-sealed bags and hidden in the trunk of the car.

36.     Defendant GORDON told Driver 1 he laundered the marijuana proceeds with the cash sales he made form music shows.   Defendant GORDON stated he exaggerated ticket sales in order to launder the money he made from drug trafficking through Bondad Productions.

Driver 3.

37.     Around April 2007, defendant ELSTEIN hired Driver 3 to transport marijuana and marijuana cash proceeds between Salt Lake City and California on two occasions.

38.     In April 2007, Driver 3 transported approximately $500,000 in cash to California and returned with approximately 85 pounds of marijuana to Utah.   Driver 3 obtained the marijuana from Supplier 1.   Defendant ELSTEIN paid Driver 3 approximately $4,500 for trip.

39.     In May 2007, defendant ELSTEIN provided Driver 3 with approximately $2,000,000 in cash to deliver to Supplier 1 in California.   One million dollars of the $2,000,000 was vacuumed sealed in the shape of the Empire State Building and the remaining cash was

8

contained in paper grocery bags.   Driver 3 obtained approximately 100 pounds of marijuana from Supplier 1 and drove back to Utah.

40.     Defendant ELSTEIN informed Driver 3 that defendant GORDON was his partner in the marijuana trafficking business.

41.     After Driver 3 delivered the cash and marijuana, Driver 3's home was searched by law enforcement and Driver 3 was arrested.   Driver 3 agreed not to transport marijuana anymore.   Defendants GORDON and ELSTEIN agreed to let Driver 3 do clean-up work, which included separating marijuana trim and shake and sifting of marijuana.

Driver 4.

42.     Beginning in 2011 and continuing to February 17, 2013, defendants GORDON and ELSTEIN hired Driver 4 to drive between at least 100 to 442 pounds of marijuana 18 to 20 different times from California to Salt Lake City to Minnesota, Illinois and Wisconsin.

43.     Driver 4 would also drive marijuana cash proceeds back to Salt Lake City for defendants GORDON and ELSTEIN.

44.     Defendant ELSTEIN set up the marijuana deliveries for Driver 4 and contacted Driver 4 when the deliveries were ready to leave Salt Lake.

45.     Defendants GORDON, ELSTEIN and A. ELSTEIN paid Driver 4 approximately $2,500 for each load of marijuana.   Driver 4 was sometimes paid by defendant ELSTEIN and sometimes by defendant A. ELSTEIN for transporting marijuana.

46.     Driver 4 submitted invoices for expenses for transporting marijuana and marijuana proceeds to defendant A ELSTEIN.   Defendant A. ELSTEIN reimbursed Driver 4 in

9

cash for travel expenses and paid in cash Driver 4's salary for transporting marijuana and marijuana proceeds.

47.     On February 17, 2013, Minnesota State Patrol ("MSP") pulled over Driver 4 while driving a 2008 Ford Truck and pulling a trailer.   The MSP searched Driver 4's truck and trailer and found 442 pounds of marijuana, $5,939, two cell phones and a two-way radio.   MSP arrested Driver 4.

48.     Defendant GORDON paid $30,000 to bail Driver 4 out of jail and defendant ELSTEIN paid $25,000 for an attorney for Driver 4.

49.     In total, defendant ELSTEIN paid Driver 4 at least $30,000 for the marijuana deliveries.

Driver 5.

50.     In the Spring of 2013, Supplier 4 contacted Driver 5 about buying several trucks and having Driver 5 register the trucks in his name in exchange for money.   Supplier 4 purchased two trucks and had Driver 5 registered one of the trucks in Nevada (the "Nevada Truck") and the other truck in South Dakota (the "South Dakota Truck").   Driver 5 established residency in each of the states by entering into two 6-month leases over the internet with homeowners and paying the six months of rent.

51.     In the summer of 2013, Supplier 4 hired Driver 5 to transport marijuana from California to Salt Lake City and to Wisconsin on two occasions.   On each trip, defendant ELSTEIN coordinated the pickups and transportation for Driver 5.   He was to be paid $100 per pound for marijuana transported.

10

52.    On the first trip, Driver 5 transported approximately 200 pounds of marijuana and was paid $20,000 for the trip.   Driver 5 arrived into Salt Lake City driving the Nevada Truck and met defendant ELSTEIN, who help Driver 5 transfer the camper from the Nevada Truck to the South Dakota Truck.   Driver 5 then drove to Wisconsin and delivered the 200 pounds of marijuana.

53.    On the second trip, Driver 5 transported approximately 600 pounds of marijuana and was paid $30,000 for the trip.   When Driver 5 arrived in Salt Lake City, Driver 5 met defendant ELSTEIN and they traded the camper from the Nevada Truck to the South Dakota Truck.   Driver 5 then drove to Wisconsin and delivered the 600 pounds of marijuana.

Driver 6.

54.    In September 2013, Supplier 4 contacted Driver 6 about earning money from transporting marijuana.

55.    Driver 6 met with Supplier 4 and defendant GORDON who explained that they needed a driver to transport marijuana from California across the United States and they would pay $100 a pound for each pound Driver 6 transported, and the average amount of each load would be approximately 250 pounds.

56.    Within a few weeks, defendant GORDON accompanied Driver 6 to Evanston, Wyoming to obtain a Wyoming driver's license for Driver 6.   The purpose of obtaining the driver's license for Driver 6 was to provide Driver 6 with a cover story for law enforcement as an employed cell phone tower surveyor.

57.    Defendant GORDON previously purchased a 2007 Dodge truck and transferred the truck to Driver 6 on December 27, 2013, for the purpose of transporting marijuana.

11

58.     After obtaining a Wyoming driver's license, Driver 6 drove approximately 250 pounds of marijuana for Supplier 4 and defendant GORDON from California to Utah and to Wisconsin.   Supplier 4 and defendant GORDON paid Driver 6 about $2,000 in advance for traveling expenses.   Supplier 6 paid Driver 6 $25,000 for the transport.

59.     Sometime after September 2013 through December 2014, Driver 6 transported, between six and nine times, approximately 250 pounds of marijuana from California to Utah and Wisconsin for Supplier 4 and defendant GORDON.   During two of his trips, Driver 6 delivered marijuana extract to defendant ELSTEIN.   Driver 6 was paid approximately $25,000 for each trip.

Defendants ELSTEIN's and A. ELSTEIN's Home.

60.     On March 26, 2018, more than 600 grams of marijuana packaged in five vacuum sealed bags with labels such as Gorilla X3, Grape Ape X1 and Sunset X3, marijuana found in a grinder, a digital scale and packaging material were found in the home of defendants ELSTEIN and A. ELSTEIN at Tall Oaks Circle, Park City, Utah.

61.     Several weeks prior to finding marijuana at defendant ELSTEIN'S and A. ELSTEIN'S home, a purported pay/owe sheet showing marijuana transactions of at least $44,000 was found in a trash can at the home of defendants ELSTIEN and A. ELSTEIN.

## COUNT 2
## 21 U.S.C. § 841(a)(1)
### (Possession with Intent to Distribute)

62.     The grand jury incorporates by reference paragraphs 1 through 61 as if fully stated herein.

63.     On or about February 17, 2013, in the Central Division of the District of Utah,

**GABRIEL SETH ELSTEIN, and**
**SCOTT DALE GORDON,**

the defendants herein, and others known and unknown to the grand jury, did knowingly and

intentionally possess with intent to distribute 100 kilograms or more of a mixture or substance

containing a detectable amount of marijuana, a Schedule I controlled substance, within the

meaning of 21 U.S.C. § 812; and did aid and abet therein, in violation of 21 U.S.C.§ 841(a)(1)

and 18 U.S.C. § 2, and punishable pursuant to 21 U.S.C. § 841(b)(1)(B).

### COUNT 3
### 21 U.S.C. § 841(a)(1)
### (Possession with Intent to Distribute)

64.    The grand jury incorporates by reference paragraphs 1 through 63 as if fully

stated herein.

65.    On or about March 26, 2018, in the Central Division of the District of Utah,

**GABRIEL SETH ELSTEIN and**
**ANGELA CHRISTINA ELSTEIN**

the defendants herein, and others known and unknown to the grand jury, did knowingly and

intentionally possess with intent to distribute a mixture or substance containing a detectable

amount of marijuana, a Schedule I controlled substance, within the meaning of 21 U.S.C. § 812;

and did aid and abet therein, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and

punishable pursuant to 21 U.S.C. § 841(b)(1)(C).

/

/.

/

/

13

## COUNT 4
## 18 U.S.C. § 1956(h)
### (Conspiracy to Commit Money Laundering)

66.     The grand jury incorporates by reference paragraphs 1 through 65 as if fully stated herein.

67.     On a date unknown, but at least by April 2007, and continuing through December 2013, within the Central Division of the District of Utah, and elsewhere,

**GABRIEL SETH ELSTEIN,**
**ANGELA CHRISTINA ELSTEIN and**
**SCOTT DALE GORDON,**

the defendants herein, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the grand jury to commit offenses against the United States those are, to wit:

(a).     to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute marijuana in violation of 21 U.S.C. § 846, and distribution and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), (1) with the intent to promote the carrying on of such specified unlawful activity and (2) knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, all in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i); and

14

(b).     to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is the transfer, transportation, and delivery of money, as well as additional financial transactions in the form of the deposit and subsequent withdrawal of money into and from accounts at financial institutions, electronic transfers between bank accounts, and domestic wire transfers initiated from bank accounts, such property having been derived from a specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute marijuana in violation of 21 U.S.C. § 846, and distribution and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1); all in violation of 18 U.S.C. §1957.

### Object of the Money Laundering Conspiracy

68.     The object of the money laundering conspiracy was to (1) promote the carrying on of the possession and distribution of marijuana in violation of 18 U.S.C § 1956(a)(1)(A)(i); (2) conceal and disguise the location, source, ownership, and control of the proceeds from the conspiracy to distribute marijuana through Bondad Productions and The Complex in violation of 18 U.S.C § 1956(a)(1)(B)(i); and (3) spend the proceeds of the drug conspiracy for the benefit of the defendants in violation of 18 U.S.C § 1957.

### Manner and Means

69.     It was part of the conspiracy that defendants GORDON, ELSTEIN and A. ELSTEIN used the proceeds from the sale of marijuana to purchase more marijuana to distribute.

70.     It was also further part of the conspiracy that defendants GORDON, ELSTEIN and A ELSTEIN used marijuana cash proceeds to purchase automobiles, pay marijuana drivers, pay marijuana retail distributors, pay for building renovations for The Complex and financially

15

support Bondad Productions and The Complex.

## Overt Acts

71.     In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the defendants or conspirators, both indicted and unindicted, committed, among others, the following overt acts in the District of Utah and elsewhere:

Laundering Drug Proceeds through Bondad Productions and The Complex

72.     On a date unknown, but by at least April 2007, and continuing through December 2013, defendants GORDON, ELSTEIN and A. ELSTEIN purchased and distributed at least 2,300 pounds of marijuana and laundered at least $5,000,000 in marijuana drug proceeds through Bondad Productions and The Complex.

73.     On a date unknown, but by at least April 2007, and continuing to the fall of 2009, defendant GORDON kept their marijuana trafficking records using spreadsheets and "QuickBooks". These records used code names for the marijuana sources of supply, drivers, cost of the marijuana, payment to drivers, drug debts and cash proceeds from marijuana sales.

74.     On a date unknown, but by at least April 2007, and continuing through December 2013, defendant GORDON also maintained two sets of records for Bondad Promotions and The Complex in order for him to launder the marijuana cash proceeds through Bondad Productions and The Complex. One set of records contained the actual ticket sales and expenses of a music show while the second set contained inflated ticket merchandise and concession sales; parking fees; and VIP services and deflated expenses. Defendant GORDON paid some actual expenses for music shows with marijuana cash proceeds.

75.     Defendant GORDON followed a four to six week delay between accounting for

laundered marijuana cash proceeds and depositing the marijuana cash proceeds together with legitimate cash proceeds into the Bondad Productions and The Complex bank accounts. Defendant GORDON made cash deposits through September 2013 for himself, The Complex and defendants ESLTEIN and A. ELSTEIN.

76.     Defendant GORDON submitted the second set of records for Bondad Productions and The Complex to the accountant for the preparation of tax returns for these companies.

77.     In the fall of 2009, defendant GORDON transferred to defendant A. ELSTEIN the responsibility for maintaining the marijuana business books and records and taught her how to create and maintain these records in the same manner in which he had created and maintained them.

78.     At about the same time, defendant GORDON began to transfer to defendant A. ELSTEIN the book keeping responsibilities for Bondad Productions and The Complex but he continued to oversee the financial affairs of Bondad Performance and The Complex.   Defendant GORDON taught defendant A. ELSTEIN how to maintain the books and records for marijuana business and how to launder the marijuana cash proceeds through the books and records of Bondad Productions and The Complex in the same manner in which he created and maintained them, specifically how to create a second set of records containing inflated income and deflated expenses for these companies in order to launder marijuana cash proceeds through the companies bank accounts.

79.     Up until December 2013, defendant GORDON was the one responsible for making cash deposits of marijuana proceeds together with legitimate cash proceeds from The Complex.

17

80.     Prior to defendant GORDON's departure from The Complex business at the end of 2013, the business struggled financially.   Proceeds from defendants GORDON's, ELSTEIN's and A. ELSTEIN's marijuana trafficking business helped cover the costs of the business and keep it afloat.

81.     After defendant GORDON left The Complex, defendant A. ELSTEIN was responsible for maintaining the two sets of books and records for The Complex and making the cash deposits for The Complex.

82.     Defendants GORDON and A. ESLTEIN made the following bank deposits of more than $10,000 of commingled marijuana cash proceeds and legitimate cash proceeds during the period beginning on or about August 13, 2008 to and including December 19, 2014 contained in Attachment A and incorporated herein by reference.

83.     On September 17, of 2013, defendant GORDON made three deposits of marijuana cash proceeds into the following three accounts:

| Date (on or about) | Depositor | Bank Account | Amount of Marijuana Cash Proceeds |
|---|---|---|---|
| September 17, 2013 | Defendant GORDON | The Complex Zions Bank account 0437 | $30,000 cash |
| September 17, 2013 | Defendant GORDON | Defendants ELSTEIN and A. ELSTEIN Zions Bank account 1754 | $50,000 cash |
| September 17, 2013 | Defendant GORDON | Defendant GORDON Zions Bank account 2595 | $50,000 cash |

Laundering Drug Proceeds for Construction of The Complex

84.     Beginning in 2009 and continuing to September 2010, defendants GORDON and ELSTEIN began building a music venue called the The Complex.   The cost of the construction

18

was at least $1,300,000. Of this amount, approximately $400,000 came from marijuana cash proceeds previously laundered through Bondad Productions and The Complex bank accounts. The remaining amount of approximately $900,000 was marijuana cash proceeds paid directly to those companies and individuals related to the construction. Specifically, defendant GORDON made the following cash payments to I.M. with marijuana proceeds for construction improvements to The Complex contained in Attachment B and incorporated herein by reference.

85.　The marijuana cash payments defendant GORDON made to I.M. were shrink-wrapped plastic bags in $50,000 increments and made on almost a weekly basis. I.M. functioned as the foreman for the construction project and was responsible for paying the construction companies involved in the construction of The Complex.

### Laundering Drug Proceeds to Pay for Personal Assets

86.　On September 4, 2012, defendant GORDON deposited $135,000 in cash into the Bondad Productions Zions Bank account 6559. The cash deposits into the Bondad Productions bank account during this time consisted of comingled marijuana cash drug proceeds with some ticket sales from concerts.

### Tall Oaks Property

87.　On September 6, 2012, check #1460, made out to defendant DUMBLES in the amount of $122,000, was written from the Bondad Productions Zions Bank account 6559.

88.　On September 7, 2012, check #1460, made out to defendant DUMBLES in the amount of $122,000 was deposited into the Dumbles Zions Bank account 0818.

89.　On September 12, 2012, $122,000 was transferred from the Dumbles Zions Bank account 0818 to defendants ELSTEIN's and A. ELSTEIN's Zions Bank account 1754.

90.     On September 12, 2012, check #194 from defendants ELSTEIN's and A. ELSTEIN's Zions Bank account 1754 was made out to R.S.R. in the amount of $156,152.08. The memo on the check says "for lot 26 Pinebrook Payoff". Pinebrook Lot 26 is a real property located at 7467 Tall Oaks Circle, Park City, Utah.

Hilltop Property

91.     In 2011, in a similar pattern of transfers stemming from Bondad Production's Zions Bank account 6559 resulted in payments toward another real property located at 4269 Hilltop Drive, Park City, Utah.

92.     On March 31, 2011, the Dumbles Zions Bank account 0818 received a $50,000 deposit from the Bondad Productions Zions Bank account 6559. The balance at the time of the deposit in the Bondad Productions Zions Bank account 6559 was $8,904.

93.     On April 5, 2011, defendant ELSTEIN signed check #1034 from the Dumbles Zions Bank account 0818 for $10,000 written to Park City Title Company. The balance in Zions Bank account 0818 when the check cleared was approximately $56,378. The notation of the check stated it was for "Earnest Money for 4269 Hill Top".

94.     On April 28, 2011, a $100,000 deposit from the Bondad Productions Zions Bank account 6559 was made into the Dumbles Zions Bank account 0818. The balance in the Bondad Productions Zions Bank account 6559 at the time of the deposit was $50,790.

95.     On May 7, 2011, defendant ELSTEIN had cashier's check, #8010179, issued from the Dumbles Zions Bank account 0818 for $100,000 made payable to Park City Title. The balance in the Dumbles Zions Bank account 0818 at the time the check cleared was approximately $140,074. The purchase of Hill Top was recorded on May 10, 2011.

Diamond

96.   Sometime during 2009 and 2010, defendant ELSTEIN purchased a $70,000

diamond for defendant A. ELSTEIN with marijuana cash proceeds.

## COUNT 5
### 18 U.S.C. § 1956(a)(1)(A)(i)
### (Promotion Money Laundering)

97.   The grand jury incorporates by reference paragraphs 1 through 96 as if fully

stated herein.

98.   On or about September 17, 2013, within the Central Division of the District of

Utah,

### GABRIEL SETH ELSTEIN,
### ANGELA CHRISTINA ELSTEIN and
### SCOTT DALE GORDON,

the defendants herein, did knowingly and willfully conduct and attempt to conduct a financial

transactions affecting interstate commerce, to wit, the deposit of $30,000 into the Zions Bank

account of The Complex, account number 0437, which transactions involved the proceeds of

specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute

marijuana in violation of 21 U.S.C. § 846, and distribution and possession with intent to

distribute marijuana in violation of 21 U.S.C. § 841(a)(1), with the intent to promote the carrying

on of such specified unlawful activity that is, conspiracy to distribute and possess with intent to

distribute marijuana in violation of 21 U.S.C. § 846, and distribution and possession with intent

to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), and that while conducting and

attempting to conduct such financial transactions, knew that the property involved in the

financial transactions represented the proceeds of some form of unlawful activity, all in violation

21

of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 2(a) and 2(b).

## COUNT 6
### 18 U.S.C. § 1956(a)(1)(B)(i)
### (Concealment Money Laundering)

99.   The grand jury incorporates by reference paragraphs 1 through 98 as if fully stated herein.

100.   On or about September 17, 2013, within the Central Division of the District of Utah,

### GABRIEL SETH ELSTEIN,
### ANGELA CHRISTINA ELSTEIN and
### SCOTT DALE GORDON,

the defendants herein, did knowingly and willfully conduct and attempt to conduct financial transactions affecting interstate commerce, to wit, the deposit of $30,000 into the Zions Bank account of The Complex, account number 0437, which transactions involved the proceeds of specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute marijuana in violation of 21 U.S.C. § 846, and distribution and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, all in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2(a) and 2(b).

/

/

## COUNT 7
### 18 U.S.C. § 1956(a)(1)(B)(i)
### (Concealment Money Laundering)

101.    The grand jury incorporates by reference paragraphs 1 through 100 as if fully stated herein.

102.    On or about November 10, 2015, within the Central Division of the District of Utah,

**GABRIEL SETH ELSTEIN,**
**ANGELA ELSTEIN and**
**DUMBLES HOLDINGS, LLC,**

the defendants herein, did knowingly and willfully conduct and attempt to conduct a financial transaction affecting interstate commerce, to wit, the purchase of real property located at 536 West 100 South, Salt Lake City, Utah, which transaction involved the proceeds of specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute marijuana in violation of 21 U.S.C. § 846, and distribution and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), and money laundering in violation of 18 U.S.C. §§ 1956 and 1957, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, and that while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2(a) and 2(b).

/

/

<u>**COUNTS 8-10**</u>
**18 U.S.C. § 1957**
**(Money Laundering)**

103.    The grand jury incorporates by reference paragraphs 1 through 102 as if fully stated herein.

104.    On or about the dates listed for each count below, within the Central Division of the District of Utah,

**GABRIEL SETH ELSTEIN,**
**ANGELA CHRISTINA ELSTEIN and**
**SCOTT DALE GORDON,**

defendants herein, knowingly engaged, and aided and abetted, counseled, commanded, inducted and procured, in the following monetary transactions and aided and abetted involving funds that were the proceeds of criminally derived property and had a value in excess of $10,000, and were derived from specified unlawful activity, that is conspiracy to distribute and possess with intent to distribute marijuana in violation of 21 U.S.C. § 846, and distribution and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), with each such transaction constituting a separate count in the Superseding Indictment:

| Count | Date (on or about) | Transaction Amount | Specified Unlawful Activity |
|-------|--------------------|--------------------|-----------------------------|
| 8 | September 17, 2013 | $30,000 cash deposit of marijuana proceeds into the Zions Bank account of The Complex, account number 0437 | 21 U.S.C. §§ 841 and 846 |
| 9 | September 17, 2013 | $50,000 cash deposit of marijuana proceeds into the Zions Bank account of defendant GORDON, account number 2595 | 21 U.S.C. §§ 841 and 846 |

| 10 | September 17, 2013 | $50,000 cash deposit of marijuana proceeds into the Zions Bank account of defendants ELSTEIN and A. ELSTEIN, account number 1754 | 21 U.S.C. §§ 841 and 846 |
|---|---|---|---|

All in violation of 18 U.S.C §§ 157 and 2(a) and 2(b).

### COUNT 11
### 18 U.S.C. § 1957
### (Money Laundering)

105.    The grand jury incorporates by reference paragraphs 1 through 104 as if fully stated herein.

106.    On or about November 10, 2015, within the Central Division of the District of Utah,

### GABRIEL SETH ELSTEIN,
### ANGELA CHRISTINA ELSTEIN and
### DUMBLES HOLDINGS, LLC,

defendants herein, did knowingly engage and attempt to engage in a monetary transaction, that is, the purchase of real property located at 536 West 100 South, Salt Lake City, Utah, in criminally derived property of a value greater than $10,000 and was derived from specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute marijuana in violation of 21 U.S.C. § 846, distribution and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), and money laundering in violation of 18 U.S.C. §§ 1956 and 1957, all in violation of 18 U.S.C. §§ 1957 and 2(a) and 2(b).

/

/

/

25

**COUNTS 12-13**
**18 U.S.C. § 1957**
**(Money Laundering)**

107.  The grand jury incorporates by reference paragraphs 1 through 106 as if fully stated herein.

108.  On or about the dates listed for each count below, within the Central Division of the District of Utah,

**SCOTT DALE GORDON,**

defendant herein, knowingly engaged, and aided and abetted, counseled, commanded, inducted and procured, in the following monetary transactions and aided and abetted involving funds that were the proceeds of criminally derived property and had a value in excess of $10,000, and were derived from specified unlawful activity, that is distribution and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), with each such transaction constituting a separate count in the Superseding Indictment:

| Count | Date (on or about) | Transaction Amount | Specified Unlawful Activity |
|---|---|---|---|
| 12 | August 22, 2014 | $239,000 cash deposit of marijuana proceeds into the Zions Bank account of defendant GORDON, account number 2595 | 21 U.S.C. §§ 841 and 846 |
| 13 | November 26, 2014 | $150,000 cash deposit of marijuana proceeds into the Zions Bank account of defendant GORDON, account number 2595 | 21 U.S.C. §§ 841 and 846 |

All in violation of 18 U.S.C §§ 157 and 2(a) and 2(b).

## NOTICE OF INTENT TO SEEK FORFEITURE

Pursuant to 21 U.S.C. § 853, upon conviction of any offense in violation of 21 U.S.C. §§ 841 or 846, as set forth in this Superseding Indictment, the defendant shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offenses. The property to be forfeited includes, but is not limited to, the following:

- A MONEY JUDGMENT equal to the value of any proceeds obtained, directly or indirectly, as the result of such offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offenses that is not available for forfeiture for one or more of the reasons listed in 21 U.S.C. § 853(p) as a result of any act or omission of the defendant(s).

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of any offense in violation of 18 U.S.C. §§ 1956 and/or 1957, the defendants shall forfeit to the United States of America any property, real or personal, involved in such violations, and any property traceable to such property.  The property to be forfeited includes, but is not limited to the following:

- 536 West 100 South, Salt Lake City, Utah;
- 7467 Tall Oaks Circle, Park City, Utah;
- 4269 Hilltop Drive, Park City, Utah;
- A diamond that ELSTEIN paid $70,000 in cash for in about 2010; and

27

▪ a MONEY JUDGMENT equal to the value of all property involved in the money laundering and any property traceable to such property that is not available for forfeiture for one or more of the reasons listed in 21 U.S.C. § 853(p) as a result of any act or omission of the defendant(s).

SUBSTITUTE ASSETS

If any of the property described above, as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. §853(p) and 18 U.S.C. § 982(b).

A TRUE BILL:

FOREPERSON OF THE GRAND JURY

JOHN W. HUBER
United States Attorney

CY H. CASTLE
Assistant United States Attorney

28

ATTACHMENT A

ATTACHMENT A

Cash Deposits over $10,000 into Business and Personal Accounts

| Date | Depositor | Subject Account | Cash In | TOTAL | |
|---|---|---|---|---|---|
| 8/13/2008 | | Bondad Productions, Zions Bank Account 6559 | $ 55,000.00 | | |
| 8/13/2008 | | Bondad Productions, Zions Bank Account 6559 | $ 12,500.00 | | |
| 10/1/2008 | | Bondad Productions, Zions Bank Account 6559 | $ 42,935.00 | | |
| 11/21/2008 | | Bondad Productions, Zions Bank Account 6559 | $ 50,660.00 | | |
| 2008 Cash Totals | | | | $ 161,095.00 | |
| 1/13/2009 | | Bondad Productions, Zions Bank Account 6559 | $ 65,880.00 | | |
| 1/26/2009 | | Bondad Productions, Zions Bank Account 6559 | $ 45,600.00 | | |
| 3/13/2009 | | Bondad Productions, Zions Bank Account 6559 | $ 95,332.00 | | |
| 3/25/2009 | | Bondad Productions, Zions Bank Account 6559 | $ 116,185.00 | | |
| 6/5/2009 | | Bondad Productions, Zions Bank Account 6559 | $ 94,397.00 | | |
| 6/9/2009 | | Bondad Productions, Zions Bank Account 6559 | $ 79,230.00 | | |
| 6/17/2009 | | Bondad Productions, Zions Bank Account 6559 | $ 97,232.00 | | |
| 7/23/2009 | | Bondad Productions, Zions Bank Account 6559 | $ 189,600.00 | | |
| 8/25/2009 | | Bondad Productions, Zions Bank Account 6559 | $ 44,601.00 | | |
| 10/27/2009 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 72,200.00 | | |
| 11/13/2009 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 198,790.00 | | |
| 12/22/2009 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 49,250.00 | | |
| 2009 Cash Totals | | | | $ 1,128,037.00 | |
| 1/21/2010 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 111,456.00 | | |
| 3/1/2010 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 88,720.00 | | |
| 3/23/2010 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 50,009.00 | | |
| 4/13/2010 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 204,845.00 | | |
| 4/27/2010 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 135,000.00 | | |
| 6/17/2010 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 275,070.00 | | Gabe added as signer on July 7, 2010 to BP, Zions Bank Account 6559 |
| 7/28/2010 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 287,702.00 | | |
| 10/13/2010 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 179,300.00 | | |
| 12/7/2010 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 200,020.00 | | |
| 2010 Cash Totals | | | | $ 1,532,122.00 | |
| 1/27/2011 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 221,940.00 | | |
| 3/28/2011 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 166,210.00 | | |
| 4/26/2011 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 211,230.00 | | |
| 7/15/2011 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 125,040.00 | | |
| 7/19/2011 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 220,080.00 | | |
| 9/26/2011 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 50,000.00 | | |
| 10/12/2011 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 220,180.00 | | |
| 12/16/2011 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ 215,000.00 | | |
| 2011 Cash Totals | | | | $ 1,429,680.00 | |

ATTACHMENT A

| Date | Depositor | Subject Account | Cash In | | TOTAL |
|---|---|---|---|---|---|
| 2/8/2012 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ | 100,000.00 | |
| 4/3/2012 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ | 20,092.00 | |
| 5/11/2012 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ | 99,980.00 | |
| 7/20/2012 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ | 144,990.00 | |
| 8/10/2012 | S. Dale Gordon | The Complex, Zions Bank Account 0437 | $ | 25,000.00 | |
| 8/10/2012 | S. Dale Gordon | Vertigo, Zions Bank Account 0445 | $ | 25,000.00 | |
| 9/4/2012 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ | 135,005.00 | |
| 12/17/2012 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ | 20,000.00 | |
| 12/31/2012 | S. Dale Gordon | Bondad Productions, Zions Bank Account 6559 | $ | 140,175.00 | |
| **2012 Cash Totals** | | | $ | | 710,242.00 |
| 3/11/2013 | S. Dale Gordon | The Complex, Zions Bank Account 0437 | $ | 50,120.00 | |
| 3/11/2013 | S. Dale Gordon | Gabe Elstein, Zions Bank Account 1754 | $ | 25,000.00 | |
| 3/11/2013 | S. Dale Gordon | S. Dale Gordon, Zions Bank Account 2595 | $ | 25,000.00 | |
| 4/9/2013 | S. Dale Gordon | The Complex, Zions Bank Account 0437 | $ | 50,000.00 | |
| 4/9/2013 | Gabriel Elstein | Gabe Elstein, Zions Bank Account 1754 | $ | 50,000.00 | |
| 4/9/2013 | S. Dale Gordon | S. Dale Gordon, Zions Bank Account 2595 | $ | 50,000.00 | |
| 4/22/2013 | S. Dale Gordon | S. Dale Gordon, Zions Bank Account 2595, Gabe Elstein, Zions Bank Account 1754, The Complex, Zions Bank Account 0437 | $ | 20,000.00 | Gordon=5k, Complex=10k, El |
| 5/8/2013 | S. Dale Gordon | The Complex, Zions Bank Account 0437 | $ | 30,000.00 | |
| 6/6/2013 | S. Dale Gordon | The Complex, Zions Bank Account 0437 | $ | 29,400.00 | |
| 8/14/2013 | S. Dale Gordon | S. Dale Gordon, Zions Bank Account 2595 | $ | 50,000.00 | |
| 9/17/2013 | S. Dale Gordon | The Complex, Zions Bank Account 0437 | $ | 30,000.00 | |
| 9/17/2013 | S. Dale Gordon | S. Dale Gordon, Zions Bank Account 2595 | $ | 50,000.00 | |
| 9/17/2013 | S. Dale Gordon | Gabe Elstein, Zions Bank Account 1754 | $ | 50,000.00 | |
| 11/21/2013 | S. Dale Gordon | S. Dale Gordon, Zions Bank Account 2595 | $ | 50,000.00 | |
| 11/22/2013 | S. Dale Gordon | DFIED, Zions Bank Account 0536 | $ | 31,560.00 | |
| 12/30/2013 | S. Dale Gordon | Bondad Enterprises Inc., Zions Bank Account 0411 | $ | 17,980.00 | |
| **2013 Cash Totals** | | | $ | | 609,060.00 |
| 3/28/2014 | Angela Elstein | Gabe Elstein, Zions Bank Account 1754 | $ | 20,000.00 | |
| 4/24/2014 | Angela Elstein | The Complex Live., Zions Bank Account 0486 | $ | 24,000.00 | |
| 5/8/2014 | Angela Elstein | The Complex Live., Zions Bank Account 0486 | $ | 28,500.00 | |
| 5/21/2014 | Angela Elstein | Gabe Elstein, Zions Bank Account 1754 | $ | 15,000.00 | |
| 5/21/2014 | Angela Elstein | The Complex Live, Zions Bank Account 0486 | $ | 55,000.00 | |
| 6/16/2014 | Angela Elstein | The Complex, Zions Bank Account 0437 | $ | 14,500.00 | |
| 7/8/2014 | Angela Elstein | The Complex, Zions Bank Account 0437 | $ | 90,750.00 | |
| 8/6/2014 | Angela Elstein | The Complex, Zions Bank Account 0437 | $ | 28,000.00 | |
| 8/22/2014 | S. Dale Gordon | S. Dale Gordon, Zions Bank Account 2595 | $ | 239,800.00 | |
| 9/17/2014 | Angela Elstein | The Complex, Zions Bank Account 0437 | $ | 48,000.00 | |
| 10/15/2014 | Angela Elstein | The Complex, Zions Bank Account 0437 | $ | 21,000.00 | |
| 10/30/2014 | Angela Elstein | Gabe Elstein, Zions Bank Account 1754 | $ | 50,000.00 | |
| 11/7/2014 | Angela Elstein | The Complex, Zions Bank Account 0437 | $ | 22,500.00 | |
| 11/20/2014 | Angela Elstein | The Complex, Zions Bank Account 0437 | $ | 25,000.00 | |
| 11/26/2014 | S. Dale Gordon | S. Dale Gordon, Zions Bank Account 2595 | $ | 150,000.00 | |

ATTACHMENT A

| Date | Depositor | Subject Account | Cash In | | TOTAL |
|---|---|---|---|---|---|
| 12/19/2014 | Angela Elstein | The Complex, Zions Bank Account 0437 | $ | 49,000.00 | |
| 2014 Cash Totals | | | | $ | 881,150.00 |
| | | | | | |
| | | | Grand Total | $ | 6,451,386.00 |

ATTACHMENT B

ATTACHMENT B

| Date | Amount | Account |
|---|---|---|
| Marijuana Cash Proceeds Payments from Defendant GORDON for Complex Buildout 2009-2010 | | |
| September | | |
| 28-Oct | $ 50,000.00 | Marijuana Cash Proceeds Payment |
| November | | |
| 4-Jan | $ 50,000.00 | Marijuana Cash Proceeds Payment |
| 23-Mar | $ 50,000.00 | Marijuana Cash Proceeds Payment |
| 12-Apr | $ 50,000.00 | Marijuana Cash Proceeds Payment |
| 24-Apr | $ 50,000.00 | Marijuana Cash Proceeds Payment |
| 3-May | $ 30,000.00 | Marijuana Cash Proceeds Payment to I.M. |
| 10-May | $ 50,000.00 | Marijuana Cash Proceeds Payment to I.M. |
| 19-May | $ 10,000.00 | Marijuana Cash Proceeds Payment to I.M. |
| 21-May | $ 50,000.00 | Marijuana Cash Proceeds Payment to I.M. |
| 3-Jun | $ 50,000.00 | Marijuana Cash Proceeds Payment to I.M. |
| 10-Jun | $ 50,000.00 | Marijuana Cash Proceeds Payment to I.M. |
| 15-Jun | $ 50,000.00 | Marijuana Cash Proceeds Payment to I.M. |
| 23-Jun | $ 50,000.00 | Marijuana Cash Proceeds Payment to I.M. |
| Jul | | |
| 1-Jul | $ 50,000.00 | Marijuana Cash Proceeds Payment to IM |
| 14-Jul | $ 8,500.00 | Marijuana Cash Proceeds Payment to Oven |
| 16-Jul | $ 10,000.00 | Marijuana Cash Proceeds Payment to I.M. |
| 20-Jul | $ 20,000.00 | Marijuana Cash Proceeds Payment to I.M. |
| 26-Jul | $ 20,000.00 | Marijuana Cash Proceeds Payment to I.M. |
| 3-Aug | $ 20,000.00 | Marijuana Cash Proceeds Payment to I.M. |
| 14-Aug | $ 2,200.00 | Marijuana Cash Proceeds Payment to I.M. |
| 16-Aug | $ 40,000.00 | Marijuana Cash Proceeds Payment to I.M. |
| 20-Aug | $ 21,000.00 | Marijuana Cash Proceeds Payment to I.M. |
| 20-Aug | $ 21,000.00 | Marijuana Cash Proceeds Payment to I.M. |
| 26-Aug | $ 7,000.00 | Marijuana Cash Proceeds Payment to I.M. |
| 4-Sep | $ 8,000.00 | Marijuana Cash Proceeds Payment to I.M. |
| Total | $ 917,700.00 | |
| | | |
| Total Cash | $ 917,700.00 | |
| 2009 Cash | $ 150,000.00 | |

ATTACHMENT B

| Date | Amount | Account |
|------|--------|---------|
| 2010 Cash | $    767,700.00 | |